Clerk, please call the next case. 1092064, Chicago v. National, Pennsylvania Counsel, please. Counsel, Your Honours, if I may, I reserve three minutes for rebuttal. May it please the Court, my name is Steve Martello, here on behalf of Chicago International. Your Honours, I am requesting that you reverse the Arbitrators and Commissions decision and also reverse the affirmation of those decisions by the Circuit Court. I believe, Your Honours, that this is a case where the arbitrator put it into his mind that he was going to find the petitioner was credible, regardless of the fact that the petitioner was credible. I believe the evidence in this case is overwhelming, that the petitioner alleged a traumatic incident on January 29, 2005, where he fell, slipped and fell on oil in a garage at Chicago International, working as a janitor. That he allegedly hurt his back in the course of that particular accident. That he also suffered a laceration to his left forearm. What the arbitrator did not take into account, and what the arbitrator relied on specifically, actually, was that the petitioner was an uneducated Hispanic individual who didn't speak very good English. He relied on that in his decision. If you look at his decision, I haven't seen something like that ever from an arbitrator. Yes, sir. Yes, sir. How do we know what the arbitrator said? Well, the arbitrator's decision, I believe, was included as part of the transcript that was sent. Is that the way it's supposed to be? What does the rule say about what your responsibility is? Oh, well, Your Honour, I... It's not that easy, and not that simple. Okay. We should have dismissed this case because you did not include the arbitrator's decision in any of the cases. Or any of those decisions, did you? Your Honour, I believe that everything that was in that particular transcript that was sent over to you included everything. Are you asking my brief? There's five of us. Are you asking about my brief? Yeah. There's five of us, and the Supreme Court rule is clear. You're supposed to put the order appealed from in an appendix to your brief. You're supposed to put the arbitrator's decision in an appendix to your brief and the commission's decision in an appendix to your brief. And your brief has none of them. And so which one of us fights with the other one to take a look at the record just to see the arbitrator's decision? You know, the Supreme Court rules are not advisory suggestions. They're rules. They're supposed to follow. I do apologize. I... It makes our life miserable. Your Honours, I believe that if you look at the records immediately before the petitioner's alleged accident, you'll note that he had a recommendation from Dr. Espinoza for surgery to his lumbar spine. You'll note that he also was treating with a Dr. Bernardino Garcia, and Dr. Garcia spoke Spanish with him. And he would complain about his spine. You'll note that before this alleged accident at work, that when this recommendation was made for lumbar surgery by Dr. Espinoza, that there was no inciting event noted. There was nothing in there that indicated that it was something that was work-related or something outside of any activity. In fact, it was a condition that was diagnosed at that time prior to the accident of January 29, 2005 as a herniated disc lumbar stenosis. Subsequent to this accident, the petitioner, two days after, on the 20th, or rather on the 31st, went to Excel Occupational Health. This is two days after the alleged accident. He presented there, and he said, I have a laceration to my left elbow. No mention of any sort of work injury to his spine. Well, the petitioner himself testified that he did mention his back, right? Absolutely. So you have conflicting evidence on that point. That is absolutely correct, Your Honours. And I think that's very crucial because all the way through the end of June, from January 29, 2005 through the end of June, he repeatedly sees other doctors. And I can go through the litany of different locations he shows up at. Dr. Garcia, who previously he had complained about his back, sees him three times and no mention of any spine injury. And, in fact, when you say he saw Dr. Garcia three times, he didn't see him those times for any work-related injury. He was there for diabetes and other medical problems that he has, correct? Fair enough, Your Honour. But when he was seeing Dr. Garcia before the work accident, he would complain. Whatever his problems were, he would complain about them. And there's no mention of any spine problems from January 29, 2005 until June 6, 2005, when he sees Dr. Garcia. So several times. Every time he goes to see his doctor for a sinus problem or for diabetes or whatever, the arbitrator is supposed to determine that he has to mention a back injury. Well, I believe, Your Honour, if he's going to allege that he had a traumatic injury to his spine, and if the causal connection opinion by Dr. Espinoza is that he had problems that were aggravated, his spine problems were aggravated by this accident, then there should be some mention of spinal problems in the subsequent five months after the alleged accident. And in here, in these particular records, there's no mention whatsoever of any, number one, a work injury to his spine. That's crucial. Not at XL Occupational, not with Dr. Garcia when he first goes in there on February 28, 2005, so 29 days after the alleged accident. It doesn't say anything about his back, but clearly he wasn't afraid to talk about his back before the accident. And you would assume that if he had a problem, he would have said something. And he did not. And that's conflicting evidence that the Workers' Compensation Commission determined against your client. Absolutely. Well, Your Honour, I believe that the commission affirmed the arbitrator's decision and the arbitrator never addressed it. The arbitrator did not state that the Petitioner went in to see these doctors in between the accident and June 8, 2005, when he, June 6, 2005, when he first mentions any problems with his back. He doesn't even address it. Again, I think that's part of the bias that he went into when he wanted to write his decision. He wanted to find his person. He noted in his decision that this person was a gentle individual, that he was uneducated, that he only spoke Spanish. Well, he spoke Spanish with Dr. Garcia. He spoke Spanish at XL Occupational. Let's assume he had this bias you're alluding to. Let's assume that we would even extensively credit that. You're appealing and we review decisions of the commission, not the arbitrator, correct? Correct. So what does that have to do with the appeal from the commission? Well, Your Honor, I believe that when the commission affirms the arbitrator's decision as it has here, it is adopting the arbitrator's position regarding credibility. Right, which it didn't do. Exactly. And I believe that when they did that, they also disregarded the evidence. They also disregarded the manifest weight of the evidence. In this situation, when the Petitioner finally talks about his back problems to Dr. Garcia on June 6, 2005, medical records will show complaints of left leg pain, right? And Dr. Garcia writes on June 6, 2005, this is days before he even recommends another MRI to the lumbar spine, he says the Petitioner has a known herniated disc. Where does he get that? He gets that from the previous accident because the Petitioner had already been recommended a surgery that for some reason he hadn't undergone. Only known to him why he hadn't undergone that surgery to his spine already. So when he actually goes in on June 6, 2005, there's no history of a work accident there. Just says he's got a back problem. June 13, 2005, the doctor says, well, actually, let me take it in sequence. June 8, 2005, two days after he goes to see Dr. Garcia, complains of his left leg pain, he goes to McNeil Hospital. He goes to the emergency room there. And at the emergency room, he says, I have left-sided back pain. And what does he say? This is with an interpreter who testified to this. He says, it started four days before. Okay. No history of a work accident again. And the arbitrator discredited that because the records revealed that he had actually filed his application for adjustment of claims six days before he appeared at McNeil Hospital. And he had a little trouble understanding why he would say it only started four days before when he had already filed an application for adjustment of claims. I think you've just pointed out exactly what I was referring to, that this arbitrator was biased. This arbitrator makes that notation. Does he talk about the June 8, 2005 visit at McNeil Hospital? No, he doesn't. He's referring to the June 26, 2005 visit. He doesn't talk about June 8, 2005 because that would somehow hurt the arbitrator's position that this was a compensable work accident to his lumbar spine. He's referring to the June 26, 2005 visit. There are three visits between June 8, 2005 through June 26, 2005. And in none of those visits does the Petitioner, through an interpreter, tell the McNeil Hospital people that he hurt himself on the job, that he had a spine injury on January 29, 2005. Not once. Is it your position there's no objective medical evidence to support the spine injury? Your Honor, I believe that there's no objective evidence to support a spine injury arising from the January 29, 2005 incident. What about Dr. Espinoza's testimony that in looking at the ñ comparing the MRIs, he saw a new herniation? Your Honor, I believe that Dr. Anderson addresses that. He actually reviewed the MRI films. And the MRI films that he reviewed found ñ he found no new incidences of herniated discs. He found spinal stenosis that he said could wax and wane. But Espinoza said there wasn't no herniation, did he not? And Dr. Espinoza ñ yes, he did. But Dr. Espinoza also testified that he wasn't aware that the Petitioner had no complaints of back problems between January 29, 2005 and when he first saw him on June 27, 2005. So, Your Honor, if you look at ñ So according to you, unless the claimant specifically articulates the problem, even though an MRI shows a problem, the Commission should ignore that and simply hang its head in the fact that the claimant didn't say anything. That seems to be the essence of your position. No, Your Honor. I believe that ñ and I'll do deference, Your Honor. I believe my position is that when a Petitioner sustains a traumatic back injury on January 29, 2005, and he gets treatment for five months, and not once does he state, that I hurt my back on January 29, 2005, to any of his doctors, all of whom he spoke Spanish with, that undermines the arbitrator's position that Spanish was somehow a factor in the Petitioner not giving a correct history of his accident. I think it undermines the Petitioner's ñ But how do you explain away Espinoza's findings and testimony? And Dr. Espinoza's position is predicated on the Petitioner being truthful. The Petitioner saying to him, I hurt myself on January 29, 2005, when, in fact, days before, when he went to see Dr. Garcia, the Petitioner didn't say anything about a back injury. And coincidentally, the Petitioner files an application for adjustment of claim on June 22, 2005. On June 20 ñ June 20 ñ June 27, 2005, now he's got a back injury that's related to his job. Well, he just filed an application for adjustment of claim. Someone obviously put it into his brain that he has a work injury, and none of the medical records supported that before filing the application for adjustment of claim. So, Your Honors, if I may, to find this Petitioner ñ to find in favor of this Petitioner, the Court must disregard the medical opinions from Dr. Anderson. The Court must disregard that there is no history of a spinal injury between January 29, 2005 ñ there's a spinal injury at the job ñ between January 29, 2005 through June 27, 2005. The Court must disregard the histories contained in all of the medical records between January 29, 2005, given to Spanish-speaking individuals by a Spanish-speaking person until June 27, 2005. The Court must disregard that the Petitioner had a recommendation for the same spinal surgery, according to Dr. Anderson, prior to January 29, 2005, which he for some reason decided he didn't want to undergo, at least was on the fence about going. When he first saw Dr. ñ rather, when he saw Dr. Garcia on June 6, 2005, Dr. Garcia, if you look at his records, he states the Petitioner's got surgery scheduled in early July. Well, he hadn't even gone to see Dr. Espinosa at that point. How does Dr. Garcia know this? It's because the Petitioner said, I'm going to have surgery to my back. The Petitioner at some point decided this was going to be a work-related injury, and in fact, there was no medical history that supported that contention. To find in favor of this Petitioner, you have to disregard the evidence, the testimony of Azula Regalado, who was the human resources person at Chicago International. When she spoke with this Petitioner, immediately after this alleged accident on January 29, 2005, he told her, I lacerated my elbow. I lacerated my forearm. Didn't say anything about his spine. She said, are you sure you didn't hurt anything else? He said, correct, I didn't hurt anything else. It wasn't until June. This all happens about June, about the time perhaps when he files his application for adjustment of claim. Now he calls her back and says, by the way, are you folks going to be paying for my back condition? She said, what back condition? And that was part of the evidence as well, part of the testimony. To find in favor of this Petitioner, you must find that the Respondent knew of the spine injury immediately after the January 29, 2005 incident. In fact, none of the medical records support that, the evidence that two people who testified on behalf of the Respondent, that is, I'm sorry, on behalf of Chicago International, denied that. To find in favor of this Petitioner, in favor of Mr. Calderon, you must find that Arbitrator Judah did not try to rehabilitate the Petitioner in his own line of questioning. That was also in the record. I think that being one of the individuals who was there and actually witnessing it, I was, quite frankly, shocked. But from that standpoint, the decision didn't shock me. Is there something wrong with the arbitrator asking additional questions? Your Honor, I think the tenor with which he asked it and the fervor with which he asked them led me to understand that this was not going to be a situation where he was going to review all of the medical records objectively. And, in fact, the decision supports my contention. The decision supports my suspicions that, in fact, he did not review all of the medical records or at least take those into account in finding credibility. He called the Petitioner a gentle man. Where does he get that? The Petitioner got up there and testified, and he actually lied. And all the evidence to the contrary, the arbitrator still found that the Petitioner was credible. I don't know where he came up with that. Thank you, counsel. We'll have time on rebuttal. Thank you, Your Honor. Counsel, please. May it please the Court, Mr. Martella. Your Honors, my name is Jack Epstein. I represent Jose Calderon in this matter. I'm asking this Court to affirm the arbitrator, the commission, and the circuit court, all who found in favor of Mr. Calderon. The arbitrator was the one person who had the opportunity to independently view the testimony of every witness in this case. He is the one person who had the opportunity to review the medical records and to review the testimony of Dr. Espinosa and Dr. Anderson. We view this case as a question as to whether the accident that is undisputed in this case aggravated my client's previous and well-documented back injury. One of the things opposing counsel keeps emphasizing over and over again is, and perhaps you can opine on this issue, is why the claimant allegedly never told all of these treating physicians and doctors about this was somehow connected to his job. Well, first of all, what we need to understand about this case, respectfully, is that my client was suffering from a severe and serious back injury for a long period of time. We admit that he suffered a back injury or had a back injury even before the accident. We admit that fact. So he's always feeling pain. In fact, this is why I believe in my reading of the evidence that Dr. Anderson actually helps us in our case. Because Dr. Anderson says that there was no question that Mr. Calderon was suffering pain during this whole period of time. He just disputes the fact that my client's spine condition became worse. So we understand during this period of time that Mr. Calderon felt back pain. Did he understand that he had, in fact, Dr. Anderson also says, Your Honor, that he would have periods where his pain would be bad, where it would increase, where it would decrease. Well, we know that my client's pain increased and he was requesting some medical treatment. That's documented in the record. So he doesn't know himself why that's going on. Well, it isn't until he has an MRI, and the MRI shows that there is a new finding. And in that moment, Dr. Espinosa is able to say, Hey, okay, the reason why you're having some increased pain is because you had that accident, and that accident has caused a new injury in your spine on a new level. And that's why you for sure need surgery now, and that's why we have an accident here. They can't get around the fact that there is an MRI from before the accident, and there's an MRI after the accident. They can't get around that evidence. And the commission looked at that evidence, the arbitrator looked at that evidence, and it was clear, clear that there was a new and different herniation at a new level in his spine. In fact, if you take a look at it, there's a new radiologist, a doctor who reviews that MRI and says in the MRI there is a new finding. They don't even discuss that. Dr. Espinosa takes a look at the films, takes a look at the report, and says, Yes, it's clear there is a new finding. Now they have Dr. Anderson come in, and they pay him, and he takes a look at the MRI films, and he says, Well, no, no, there's no change. Well, this is a manifest weight case. And we won at the arbitration level, we won at the commission level, and we won at the circuit court level. They cannot say that there is no evidence before Your Honors to say that there is not a new injury. They can't say that. All they can do is impugn my client and the arbitrator and the commission and kind of throw a lot of mud all over this case. The arbitrator, I think, did a very good job of summing up my client. He's a simple man. In fact, the arbitrator says it is completely understandable to this arbitrator, considering Petitioner, Calderon's background, a simple Spanish-speaking gentleman trying to navigate his way in an English-speaking country that he would approach each of the difficult issues he was facing one at a time. Went to the doctor. He deals with his diabetes. He goes to the doctor. He deals with his cut in his elbow because he's got diabetes. If that's an infection, that could be a major problem for him. The arbitrator continues. That the Petitioner signed his application for adjustment of claim, and we went over this on counsel's argument, alleging an injury to his lumbar spine on January 20, 2005, and then went to McNeil Emergency Room six days later on June 26, 2005, complaining of a lower back and leg pain without any history of trauma. It is, therefore, logical to question the accuracy of the emergency room history. It is true that my client is speaking Spanish to Dr. Garcia. It is true that my client is speaking Spanish to Dr. Espinosa. It is not true that he is able to speak to the emergency room personnel and the Excel people, Dr. Loyola, in Spanish. They are all using interpreters. And it's clear, my client testified, that he did tell them he was having problems with his back. He did tell them he was having a crisis. So much so that he was taken in an ambulance to McNeil Hospital and had to be put into the hospital. I think that, and I'm going to close quickly, I just don't understand the argument that my client's condition was not materially changed by this accident. I don't understand that. I think I can understand, perhaps, that there was no back injury. There was no injury. But they can't say that because Dr. Anderson himself says that my client was suffering pain. My client was suffering from a severe back injury. They can't ignore that fact. So I ask you, respectfully, to find, in the petitioner, Jose Calderon's favor and affirm the circuit court. Thank you very much. Your final plea. Your Honors, if I may, just in response to counsel's allegation, on June 8, 2005, when the petitioner presented at McNeil's emergency room, he went there with his son. He testified to that. His son did a translation. His son translated for his father and denied any trauma, said that his back pain started four days before June 8, 2005. The arbitrator conveniently doesn't even address that. He can't. But if he starts to address those kinds of little issues, they become big issues. And if you take five months' worth of not giving a history of any sort of back problems, number one, and not even saying that you hurt yourself on the job, if you did have a back problem, for five months after the alleged accident, that undermines his case. And how do you explain away Espinoza's testimony regarding a new herniation? Your Honor, if there's a new herniation, which Dr. Anderson disputes, even if there's a new herniation. I understand, but how do you explain away Espinoza's testimony there was a new herniation? Why would the commission ignore that? If there's a new herniation, it's not related to this work accident. If there's a new herniation, it was caused by probably the same thing that caused the first herniation before the work accident, which the petitioner said there was no inciting event. Dr. Espinoza's own records from April 5, 2004, before this work accident, says he's got a herniated disc. There's no inciting event. He needs surgery. He's not going to have surgery for a while. We're not sure why. And then in 2005, he says there's a new herniation after the accident, right? Exactly. And how do you explain that away? But, Your Honor, it's the exact same reason that it happened before. There's no inciting event. The histories that he gives to the doctors leading up to his visit with Dr. Espinoza, including the Dr. Garcia, who speaks Spanish, there's no history of any inciting event. This just happens. This is a guy who's got a back problem, whether it be on an L2 level, L3 level, L4, L5. It doesn't make a difference. There's no history of an immediate problem with his back after January 29, 2005. It doesn't happen for five months. The guy's got a back problem. That's serious. That's traumatic. A herniated disc. It doesn't take five months to just pop up and all of a sudden start happening. And he certainly wouldn't show up on June 8, 2005 in an emergency room and say it started happening four days before. I don't know what he was doing. He testified that it was all related to his work accident. Clearly, the records dispute that. And clearly, the arbitrator was not inclined to look at the records and look at them objectively. Thank you, Your Honor. Thank you, counsel. The court will take the matter under advisory.